**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION**

| | | |
|---|---|---|
| TONY RAMSEK, et. al. | : | Case No. 3:20-cv-00036 |
|     Plaintiffs | : | |
| v. | : | |
| ANDREW BESHEAR, et. al. | : | |
|     Defendants | : | |

**BRIEF IN ACCORDANCE WITH THE COURT'S ORDER OF JUNE 1, 2020**

**I.   Background**

   A.  <u>Procedural posture of this case</u>

On June 10, 2020, Plaintiffs filed the current case as a result of Governor Beshear's unconstitutional order banning all manner of political protest mass gatherings. [Complaint, RE#1]. After briefing on Plaintiffs' Motion for Preliminary Injunction, and in light of counsel for Governor Beshear's statement at oral argument that the Governor would not criminally enforce his order against Plaintiffs, this Court denied preliminary injunctive relief on June 21, 2020, finding that Plaintiffs lacked standing (this Court did not reach the merits of the First Amendment and other claims). [Opinion and Order, RE#22]. Plaintiffs appealed, and also moved this Court for an injunction pending appeal, which was also denied. [Notice of Appeal, RE#23; Motion Injunction Pending Appeal, RE#24, Order, RE#27].

Plaintiffs then sought an injunction pending appeal in the Sixth Circuit, which that Court granted in an order on May 23, 2020, at least as to drive in and drive around political protest mass gatherings. [Order, R.9]. Among other things, the Sixth Circuit determined Plaintiffs indeed had standing because:

1

> There appears to be a history of previous enforcement of the Order against the plaintiffs and other citizens because on at least one previous occasion the police blocked protestors from conducting a drive-through protest on public roads around the state Capitol. The defendants claim that the state has affirmatively disavowed future enforcement because on May 19 the state police commissioner submitted a declaration stating that the order will not be enforced against any protestors on May 23. This, however, is insufficient for two reasons. First, we generally give little weight to ad hoc carve-outs to criminal prohibitions created mid-litigation that do not alter the provision criminalizing the plaintiff's conduct. *See Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1395 (6th Cir. 1987). Second, the state police commissioner does not have authority to determine whether to prosecute violators of the Order. Accordingly, we conclude the plaintiffs have standing.

The Sixth Circuit also held that Plaintiffs had demonstrated a substantial likelihood of success, concluding:

> The protestors are likely to succeed in showing that the Order is a content-based restriction. In an earlier case, we held that the Order likely discriminated against religion because the Order at that time permitted citizens to gather in retail stores and airports so long as they practiced social distancing, but did not permit them to gather for religious services. *See Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020). The same logic applies here—and indeed with more force. Because the Order permits citizens to gather in retail stores, airports, parking lots, and churches, but does not permit them to gather for a protest, it discriminates against political speech.
>
> Because the Order is not content neutral, its prohibition on group protests is subject to strict scrutiny. For the reasons we articulated in *Maryville Baptist*, the application of strict scrutiny is likely fatal to this prohibition, at least with respect to drive-in and drive-through protests: The Governor claims . . . that the explanation for these groups of people to be in the same area—[political protest]—distinguishes them from groups of people in a parking lot or a retail store or an airport or some other place where the orders allow many people to be. We doubt that the reason a group of people go to one place has anything to do with it. Risks of contagion turn on social interaction in close quarters; the virus does not care why they are there. So long as that is the case, why do the orders permit people who practice social distancing and good hygiene in one place but not another? If the problem is numbers, and risks that grow with greater numbers, then there is a straightforward remedy: limit the number of people who can attend a service at one time. *Id.*

The Sixth Circuit then observed:

> That said, for the same reasons we articulated in *Maryville Baptist*, we are not able on this exceptionally short notice to conclude that the prohibition on in-person protests would likely fail strict scrutiny: The balance is more difficult when it comes to in-person [protests]. Allowance for drive-[through] [protests today] mitigates some harm to the

2

additional input from the district court, whether of a fact-finding dimension or not, we are inclined not to extend the injunction to in-person [protests] at this point. We realize that this falls short of everything the [protestors] ha[ve] asked for and much of what [they] want[]. But that is all we are comfortable doing after the 24 hours the plaintiffs have given us with this case. **In the near term, we urge the district court to prioritize resolution of the claims in view of [other planned protests] and for the Governor and Plaintiffs to consider acceptable alternatives**. *Id.* (emphasis added). Nor does our subsequent order in *Roberts v Neace*, No. 20-5465 (6th Cir. May 9, 2020), resolve the question, because there may be features of large in-person protests that distinguish them from in-person religious services.

Then, on May 29, 2020, the Sixth Circuit vacated this Court's order and remanded this matter for further factfinding, concluding:

> In this appeal, plaintiffs challenge the district court's opinion and order denying their motion for a preliminary injunction based on its ruling that plaintiffs lacked standing. On May 23, 2020, we entered an order concluding that plaintiffs have standing and granting, in part, their motion for an injunction pending appeal. Our order enjoined defendants from prohibiting protestors from gathering for drive-in and drive-through protests but did not determine whether plaintiffs may conduct in-person, socially distanced protests. We are unable to further review the decision of the district court under these circumstances because, based on the record, we have no way to determine what the facts are concerning a prohibition on in-person protests and whether there are features of large in-person protests that distinguish them from other mass gatherings, such as at retail venues, which the Order permits, and churches, which our prior decisions permit. [R. 14-2].

So, in vacating and remanding, the Sixth Circuit ordered this Court to allow this matter to proceed for "additional findings of fact and conclusions of law" on the issue of "what the facts are concerning a prohibition on in-person protests and whether there are features of large in-person protests that distinguish them from other mass gatherings, such as at retail venues, which the Order permits, and churches, which our prior decisions permit." *Id.*

  B. <u>The South Bay United Pentecostal Church Litigation</u>

On May 8, 2020, the South Bay United Pentecostal Church and its Bishop filed suit in the U.S. District Court for the Southern District of California challenging California Governor Gavin Newsome's COVID-19 related orders related to in-person church worship. *South Bay Pentecostal Church v. Newsom*, No. 3:20-cv-00865-BAS-AHG (S.D. Cal. May 8, 2020). The

3

Plaintiffs moved for a temporary restraining order, which was denied. They appealed that ruling to the Ninth Circuit and the panel, in a 2-1 decision, denied them an injunction pending appeal, but set the matter down for expedited briefing, which presently is occurring. *South Bay Pentecostal Church v. Newsom*, No. 20-55533 (9th Cir. May 15, 2020). Perhaps recognizing that a U.S. Supreme Court review was possible, Governor Newsome then substantially amended his stay at home order on May 25, 2020 to now permit in-person church worship, but with 25% capacity occupancy limits.[1]

The *South Bay Pentecostal Church* Plaintiffs then filed an application for injunctive relief pending appeal in the United States Supreme Court, solely as relates to the occupancy limits, which application was denied on a 5-4 vote. *South Bay Pentecostal Church v. Newsom*, 19A1044. Four of the Justices who voted to deny relief, Justices Ginsburg, Breyer, Sotomayor, and Kagan, offered no explanation at all for their votes. Only Chief Justice Roberts did with a concurring opinion that was **_not joined by the other four Justices_**.

Chief Justice Roberts first observed that under U.S. Supreme Court precedent:

"Such a request demands a significantly higher justification than a request for a stay because, unlike a stay, an injunction does not simply suspend judicial alteration of the *status quo* but grants judicial intervention that has been **withheld by lower courts**." *Respect Maine PAC v. McKee*, 562 U.S. 996 (2010) (internal quotation marks omitted). This power is used where "the legal rights at issue are **indisputably clear**" and, even then, "sparingly and only in the most critical and exigent circumstances." S. Shapiro, K. Geller, T. Bishop, E. Hartnett & D. Himmelfarb, Supreme Court Practice §17.4, p. 17-9 (11th ed. 2019) (internal quotation marks omitted) (collecting cases). (emphasis added).

He next observed:

Although California's guidelines place restrictions on places of worship, those restrictions *appear* consistent with the Free Exercise Clause of the First Amendment. Similar or more severe restrictions apply to comparable secular gatherings, including lectures, concerts, movie showings, spectator sports, and theatrical performances, where

---

[1] https://covid19.ca.gov/pdf/guidance-places-of-worship.pdf

4

> large groups of people gather in close proximity for extended periods of time. And the Order exempts or treats more leniently only dissimilar activities, such as operating grocery stores, banks, and laundromats, in which people neither congregate in large groups nor remain in close proximity for extended periods. (emphasis added).

And finally, he observed:

> The precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement. Our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect." *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905). When those officials "undertake[] to act in areas fraught with medical and scientific uncertainties," their latitude "must be especially broad." *Marshall v. United States*, 414 U. S. 417, 427 (1974). Where those broad limits are not exceeded, they should not be subject to second-guessing by an "unelected federal judiciary," which lacks the background, competence, and expertise to assess public health and is not accountable to the people. *See Garcia v. San Antonio Metropolitan Transit Authority*, 469 U. S. 528, 545 (1985). That is especially true where, as here, a party seeks emergency relief in an interlocutory posture, while local officials are actively shaping their response to changing facts on the ground. The notion that it is "indisputably clear" that the Government's limitations are unconstitutional seems quite improbable.

Justice Kavanaugh, joined by Justices Alito, Thomas, and Gorsuch, would have granted the application for the "extraordinary remedy" and joined in an opinion that heavily quoted the Sixth Circuit's decision in *Roberts v. Neace*, 958 F.3d 409, 414 (CA6 2020).

## II. Law and Argument

A. <u>Chief Justice Roberts' concurrence on an order denying injunctive relief pending appeal in the U.S. Supreme Court does not create any precedent, much less binding precedent.</u>

It is bedrock U.S. Supreme Court jurisprudence that the denial of certiorari "imports no expression of opinion on the merits of a case". *United States v. Carver*, 260 U.S. 482, 490 (1923) (Holmes, J.); *Hughes Tool Co. v. Trans World Airlines, Inc.*, 409 U.S. 363, 366, n. 1 (1973); *Brown v. Allen*, 344 U.S. 443, 489-497 (1953). The "variety of considerations [that] underlie denials of the writ," *Maryland v. Baltimore Radio Show*, 338 U.S. 912, 917 (1950) (opinion of Frankfurter, J.), counsels against according denials of certiorari **any precedential**

**value**. "Concomitantly, opinions accompanying the denial of certiorari cannot have the same effect as decisions on the merits." *Teague v. Lane*, 489 U.S. 288, 296 (1989).

Not surprisingly, the same view pertains to orders relating to stays or injunctions pending appeal. *Barefoot v. Estelle*, 463 U.S. 880, 907 (1983), n.5, (dissent by Marshall and Brennan). In *Barefoot*, they observed:

> "While the Fifth Circuit followed a procedure in *Brooks v. Estelle* similar to that employed here, this Court's denial of Brooks' application for a stay and petition for certiorari before judgment does not constitute a precedent approving this procedure. Denials of certiorari never have precedential value, *see, e. g., Brown v. Allen*, 344 U.S. 443, 497 (1953); *Sunal v. Large*, 332 U.S. 174, 181 (1947); *House v. Mayo*, 324 U.S. 42, 48 (1945), and the denial of a stay can have no precedential value either since the Court's order did not discuss the standard that courts of appeals should apply in passing on an application for a stay pending appeal."

Unlike injunctive relief in the Courts of Appeals which apply the well-known four-part injunction test, the U.S. Supreme Court's requirements for obtaining stays and injunctions pending appeal are a herculean, uphill climb for parties seeking such relief, because such relief is uniquely and highly disfavored in this nation's highest court. In fact, the standard for a stay in the Supreme Court, which is more forgiving than the standard for an injunction pending appeal, requires that a party demonstrate (1) "a reasonable probability" that the Supreme Court will grant certiorari, (2) "a fair prospect" that the Court will then reverse the decision below, and (3) "a likelihood that irreparable harm [will] result from the denial of a stay." *Maryland v. King*, 133 S. Ct. 1 (2012). So, bound up in the ability to even obtain a stay is a showing of a "reasonable probability" that the Supreme Court will grant *certiorari*. As anyone who is a Supreme Court watcher knows, good luck![2]

---

[2] For several reasons that are readily apparent from even a cursory observation of the procedural posture of *South Bay Pentecostal Church*, and an understanding of the grounds under which the Supreme Court grants *certiorari*, it is highly unlikely that the *South Bay Pentecostal Church* case was or is likely to be reviewed by the Supreme Court. First, the record in that case was scant in

Even Chief Justice Roberts, in his single Justice concurrence in *South Bay Pentecostal Church*, noted that obtaining injunctions pending appeal in the Supreme Court are more of an impossibility than obtaining stays. "Such a request demands a significantly higher justification than a request for a stay because, unlike a stay, an injunction does not simply suspend judicial alteration of the *status quo* but grants judicial intervention that has been **withheld by lower courts**." *Respect Maine PAC v. McKee*, 562 U.S. 996 (2010) (internal quotation marks omitted). This power is only used where "the legal rights at issue are **indisputably clear**," and even then it is only used "sparingly and only in the most critical and exigent circumstances." S. Shapiro, K. Geller, T. Bishop, E. Hartnett & D. Himmelfarb, Supreme Court Practice §17.4, p. 17-9 (11th ed. 2019) (internal quotation marks omitted) (collecting cases). (emphasis added).

In fact, and for some U.S. Supreme Court Justices, there exists a default presumption that such relief will almost never be granted regardless of the merits of the issue. *Barr v. E. Bay Sanctuary Covenant*, 140 S. Ct. 3 (2019) (Justices Sotomayor and Ginsburg commenting "[t]he lower courts' decisions warrant respect," and denying stay). And, Chief Justice Roberts has previously opined that the presence of a Circuit split alone (the situation that has developed with respect to Coronavirus related restrictions) is itself grounds to deny an injunction pending appeal, given the "sufficiently clear" standard that must be met in the U.S. Supreme Court for injunctions pending appeal. *Lux v. Rodrigues*, 561 U.S. 1306, 1308 (2010). Likewise, Justices Ginsburg, Sotomayor, and Kagan are on record as adopting the view that "differences of opinion

---

the trial court: a temporary restraining order, which the Governor did not have the opportunity to respond to before its denial, which makes that case a particularly inappropriate vehicle to obtain full court review; second, the dissent in the Ninth Circuit makes it likely that the *South Bay Pentecostal Church* case may be an appropriate case for *en banc* review in the Ninth Circuit, which would militate against certiorari; and third, these issues are still percolating in the lower Circuit Courts of Appeal, and the Supreme Court typically will not grant review of case until the Circuit split more fully develops. *See, also*, S.Ct. R. Practice 10.

7

among lower courts as proof positive that the standard has not been met." *Wheaton College v. Burwell*, 573 U.S. 958, 964 (2014).[3]

So, this reality regarding the relevant, almost insurmountable standard of the Supreme Court is as much a justification and explanation for the denial of an injunction pending appeal in *South Bay Pentecostal Church* as anything else. Further, given the other four Justices' refusal to join the Chief Justice's concurring opinion, appears to be the case. There is simply no precedent here for anyone, much less the Governor, to rely upon. Chief Justice Roberts, of all people, would agree. In fact, his opinion makes clear that the only issue even involved in *South Bay Pentecostal Church* concerned occupancy limits for in-person church attendance, not the ability of a state to ban all manner of constitutionally protected political protests.

> B. <u>There is no binding precedent to be created because five justices did not join in a written opinion, particularly where other Justices who voted to deny relief have repeatedly decried injunctions pending appeal in the United States Supreme Court, instead electing to leave in place the Circuit Courts of Appeals' decisions while appeals are litigated</u>

Even if precedent were created from the denial of an injunction pending appeal, and even ignoring that a fair reading of that decision appears to be one of deference to lower appellate courts generally, it is notable, and indeed critical, that the Chief Justice's concurring opinion did ***not*** garner the support from four other justices. This, in turn, presents a classic issue under *Marks v. United States*, 430 U. S. 188 (1977), for determining the holding of a decision of the Supreme Court when there is no majority opinion. Under the *Marks* rule, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five

---

[3] Recent opinions relating to orders from these Justices reference deference to the lower court orders. https://www.supremecourt.gov/opinions/19pdf/19a1034_new_kifl.pdf (last visited 6/2/2020).

Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Id.*, at 193.

Given the lack of any explanation for their ruling by Justices Ginsburg, Sotomayor, Breyer, and Kagan, and their prior pronouncements regarding the lack of precedential value of a denial of an injunction pending appeal, the narrowest interpretation here is one of mere deference to the lower courts. Again, nothing in *South Bay Pentecostal Church* can change the *status quo* for this case.

> C. Other recent precedent from the Supreme Court suggests that it may be differentiating cases in which there are total or near total bans from protected activities, versus some limitations that are roughly proportionate to other similar activities

Circuit Courts of Appeals have long cautioned against judicial tea leaf reading from concurring and other opinions. *Citadel Corp. v. Puerto Rico Highway Authority*, 695 F.2d 31, 33, n.4 (1st Cir. 1982). Tea leaf reading is no less difficult – and no more appropriate – here. On May 29, 2020, the Supreme Court decided a motion for an injunction pending appeal of Governor Pritzker's orders from Illinois in *Elim Romanian Pentecostal Church, et al. v. J. B. Pritzker, Governor of Illinois,* No. 19A1046. Like Governor Newsome, mere hours before his response was due, Governor Pritzker changed his orders from a total ban on in person corporate worship, to a policy of total re-opening of churches with social distancing. The Church replied that the Governor could simply re-enact his orders. And in response, the entire Supreme Court said this:

> The application for injunctive relief presented to Justice Kavanaugh and by him referred to the Court is denied. The Illinois Department of Public Health issued new guidance on May 28. **The denial is without prejudice to Applicants filing a new motion for appropriate relief if circumstances warrant.**

*Elim Romanian Church v. Pritzker*, No. 19A1046, 2020 WL 2781671, at *1 (May 29, 2020) (emphasis added).

9

The Supreme Court did not say "denied, and by the way, your claims have no merit." Again, tea leaf reading is not appropriate. It is impossible to discern what, if anything, the majority of that Court believes the appropriate framework is. But one could make the argument, looking at both decisions, that the Supreme Court does not have an appetite for delving into this issue when it came to conditions on in person worship and whether or not they constitute equal treatment (but does have an appetite to review and perhaps reverse complete or near complete bans on protected activity), particularly in cases that involve the review of a temporary restraining order posture.

Again, this entire line of analysis appears to be an exercise of inappropriate judicial tea leaf reading.

D. Nothing has altered the binding precedent in this Circuit of *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020)

Can a concurring opinion of a single Justice denying an injunction pending appeal in an unrelated case overturn the holdings in *Roberts v. Neace*, 958 F.3d 409, 414 (6th Cir. 2020), and its sister decision, *Marysville Baptist Church v. Beshear*, 957 F.3d 610 (6th Cir. 2020)? To pose the question is to answer it. Those decisions remain published decisions of the Sixth Circuit Court of Appeals so, until or unless explicitly overruled by the Supreme Court or the Sixth Circuit sitting *en banc*, they remain binding precedent on further panels of the Sixth Circuit. *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

As in both *Roberts* and *Marysville Baptist Church*, which are cases involving decisions on injunctions pending appeal, the injunction pending appeal in this case for drive-in and drive-around protests remains of record and in force at the present time. Notably (and perhaps tellingly), Defendants have not moved for the panel in this case or in *Roberts* or in *Marysville Baptist Church* to reconsider or vacate those rulings in light of *South Bay Pentecostal Church*.

Rather than incur the likely rebuke of the panels in those cases with the baseless argument that a concurring opinion of a single justice in an interlocutory order context creates binding precedent to overrule not one, but two, published decisions of the Sixth Circuit, Defendants instead invite this Court to take that rebuke and commit clear reversible error in so doing.

    E.  <u>This Court lacks discretion under the mandate rule to do anything but carry out the Sixth Circuit's order on remand</u>

To answer the question of what this Court should do, is to ask this question: does this Court have the power to overrule the Sixth Circuit Court of Appeals?

The doctrine of law of the case provides that the courts should not "reconsider a matter once resolved in a continuing proceeding." 18B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 4478 (4th ed. 2015). "The purpose of the law-of-the-case doctrine is to ensure that 'the same issue presented a second time in the same case in the same court should lead to the same result.'" *Sherley v. Sebelius*, 689 F.3d 776, 780 (D.C. Cir. 2012) (*quoting LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996)). The law of the case applies with a preliminary injunction with a developed record. *Howe v. City of Akron*, 801 F.3d 718 (6th Cir. 2015). The law of the case prevents the Governor's re-litigation of issues not remanded to this Court by the Sixth Circuit in this Court.

There is yet another hurdle for the Governor's arguments: the mandate rule. Under the mandate rule, "a district court is bound to the scope of the remand issued by the court of appeals.'" *United States v. O'Dell*, 320 F.3d 674, 679 (6th Cir. 2003) (quoting *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999)). Remands may be general or limited. *Id.* A limited remand "explicitly outline[s] the issues to be addressed by the district court and create[s] a narrow framework within which the district court must operate." *Campbell*, 168 F.3d at 265.

11

The remand order in this case was limited. The Sixth Circuit's order vacated this Court's decision on standing, and remanded the case for "additional findings of fact and conclusions of law" on the issue of "what the facts are concerning a prohibition on in-person protests and whether there are features of large in-person protests that distinguish them from other mass gatherings, such as at retail venues, which the Order permits, and churches, which our prior decisions permit." *Id.* Implicit in this remand is an opportunity to conduct limited discovery on these very issues, as Plaintiffs have requested by way of their pending discovery motion.

F.  Limited discovery – the deposition of Dr. Stack -- should be permitted

Plaintiffs seek the deposition of Dr. Steven Stack, Kentucky's Commissioner of Public Health, to explore the issues at the heart of the Sixth Circuit's remand order: "what the facts are concerning a prohibition on in-person protests and whether there are features of large in-person protests that distinguish them from other mass gatherings, such as at retail venues, which the Order permits, and churches, which our prior decisions permit."

FRCP 26(d) provides, in relevant part, as to the timing and sequence of discovery that "(1) Timing. A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, **or by court order**."

The Committee's notes as to this Rule explicitly reference that such a court order should be granted:

> Note to Subdivision (d). This subdivision is revised to provide that formal discovery—as distinguished from interviews of potential witnesses and other informal discovery—not commence until the parties have met and conferred as required by subdivision (f). Discovery can begin earlier if authorized under Rule 30(a)(2)(C) (deposition of person about to leave the country) or by local rule, order, or stipulation. **This will be appropriate in some cases, such as those involving requests for a preliminary injunction** or motions challenging personal jurisdiction. If a local rule exempts any types

12

of cases in which discovery may be needed from the requirement of a meeting under Rule 26(f), it should specify when discovery may commence in those cases. (emphasis added)

As noted in their Motion, Plaintiffs intend to examine Dr. Stack with respect to those gatherings and groups of people that the Governor's public health orders currently permit and how, if at all, they differ from in-person protests. These are the very facts and distinctions discussed by Chief Justice Roberts in his concurrence in *South Bay Pentecostal Church*. They are also the very issues and facts that the Sixth Circuit directed this Court to obtain.

Not surprisingly, there are a host of other cases involving situations just like the current circumstances where courts have permitted the narrow and limited discovery sought in this matter. *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996) (narrowly tailored discovery in the context of a preliminary injunction should be granted where the discovery would "better enable the court to judge the parties' interests and respective chances for success on the merits" at a preliminary injunction hearing); *Edudata Corp. v. Scientific Computers, Inc.*, 599 F. Supp. 1084, 1088 (D. Minn. 1984); *Oglala Sioux Tribe*, 298 F.R.D. 453 (same); *Qwest Communs. Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418 (D.Co. 2003); *see also El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 991 (S.D. Tex. 2004).

Judge Hood recently issued a thorough decision in *Branch Banking & Trust Co. v. Jones*, 2018 U.S. Dist. LEXIS 204659 (EDKY 2018), which explained and outlined the law in this District concerning the requested relief. He observed that "[e]xpedited discovery is 'appropriate in some cases, such as those involving requests for a preliminary injunction . . . .'" Judge Forester has also explained that such relief is appropriate in aid of a preliminary injunction if it is narrowly tailored. *Ky. CVS Pharm., LLC v. McKinney*, 2013 U.S. Dist. LEXIS 54244 (EDKY 2013).

Here, a preliminary injunction is pending, which militates towards granting the expedited deposition. Second, a limited (maximum of three-hour) deposition of Dr. Stack is narrowly tailored, which, again, warrants granting the relief. It is not burdensome and certainly not unduly burdensome. Finally, and as noted, the purpose of such a deposition is to obtain the exact evidence the Sixth Circuit indicated should be obtained, and Dr. Stack is the best witness from whom to obtain it.

Simply put, Defendants cannot argue that the evidence is not relevant or within the scope of the Sixth Circuit's remand order. In fact, Defendants were "urged" by the Sixth Circuit to work with Plaintiffs on finding acceptable alternatives to large in-person gatherings. Instead, Defendants ignore the Sixth Circuit and ask this Court to do likewise. As demonstrated, they have no legal authority for doing so.

### III. Conclusion

There is simply no good faith argument that a concurring opinion of a single Justice, which was not joined by any other Justices, in *South Bay Pentecostal Church* is any precedent for this case. Rather, this Court should adhere to the law of the case and the mandate rule, and proceed with those steps ordered by the Sixth Circuit. If the Governor does not like this path, his remedy is to ask the Sixth Circuit to reconsider. In the absence of such an order, however, the Sixth Circuit's mandate must be followed.

Therefore, this Court should allow the requested, limited discovery and then proceed to complete the tasks set forth by the Sixth Circuit, namely for this Court to enter "additional findings of fact and conclusions of law" on the issue of "what the facts are concerning a prohibition on in-person protests and whether there are features of large in-person protests that distinguish them from other mass gatherings, such as at retail venues, which the Order permits, and churches, which our prior decisions permit."

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
859/486-6850 (v)
513/257-1895 (c)
859/495-0803 (f)
chris@cwiestlaw.com

/s/Thomas Bruns_____
Thomas Bruns (KBA 84985)
4750 Ashwood Drive, STE 200
Cincinnati, OH 45241
tbruns@bcvalaw.com
513-312-9890

/s/Robert A. Winter, Jr. _____
Robert A. Winter, Jr. (KBA #78230)
P.O. Box 175883
Fort Mitchell, KY 41017-5883
(859) 250-3337
robertawinterjr@gmail.com

**Attorney for Plaintiffs**

## CERTIFICATE OF SERVICE

I certify that I have sent a copy of the foregoing to all counsel of record via filing in the Court's CM/ECF system, this \_3\_\_\_ day of June, 2020.

/s/ Christopher Wiest_____
Christopher Wiest (KBA 90725)