UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT

| | |
|---|---|
| TONY RAMSEK, *et al.*, | ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) Civil Action No. 3:20-cv-00036-GFVT ) |
| ANDREW BESHEAR, in his official capacity as the Governor of the Commonwealth of Kentucky, *et al.*, | ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTIONS FOR PRELIMINARY INJUNCTION AND EMERGENCY DISCOVERY**

Governor Andrew Beshear, Secretary Eric Friedlander, and Commissioner Steven Stack, in their official capacities, by and through counsel, hereby jointly submit this supplemental brief in opposition to Plaintiffs' motion for a preliminary injunction and motion for emergency discovery to take the deposition of Dr. Stack. Intervening case law issued by the United States Supreme Court necessitates denial of the preliminary injunction and discovery requests.

**I.   The Supreme Court Has Indicated That Prohibitions On Mass Gatherings In Response To COVID-19 Do Not Violate The First Amendment.**

On May 29, 2020, the United States Supreme Court denied an application by South Bay United Pentecostal Church to enjoin enforcement of a public health measure enacted by the Governor of California to curb the spread of COVID-19.[1] *South Bay United Pentecostal Church v. Newsom*, 590 U.S. ---, No. 19A1044, at *1 (May 29, 2020) (attached as Exhibit A).  Chief Justice Roberts' concurring opinion in that Order decisively resolves this case, because

---

[1] On the same day, the Court also denied an application by two churches in Chicago to enjoin Illinois' stay-at-home order. *Elim Romanian Church, et al. v. Pritzker, Gov. of Illinois*, 19A1046 (Order List 590 U.S.) (U.S. May 29, 2020).

Kentucky's Mass Gatherings Order – like the orders at issue in that case – is content neutral, and because Chief Justice Roberts' Opinion conclusively explains that state elected officials have broad latitude to enact emergency public health measures like the Mass Gatherings Order.

### A. The Mass Gatherings Order Is Content Neutral Under *South Bay United*.

Chief Justice Roberts' Opinion shows that the Mass Gatherings Order does not violate the First Amendment because it does not unfairly target any First Amendment-protected activity. The *South Bay United* case arose from several executive orders issued by Governor Newsom that are analogous to Kentucky's Mass Gatherings Order. *Id*. In particular, on March 19, 2020, Governor Newsom issued Executive Order N-33-20, ordering all individuals living in California to stay at home or their places of residence. On May 7, 2020, Governor Newsom published a four-stage plan for reopening the state. Religious establishments could not reopen until the state progressed into stage 3, but offices, manufacturing, retail, groceries, and other services were allowed to open prior to stage 3. Further, California issued additional guidelines for religious organizations when they are allowed to open in stage 3, limiting attendance to 25% of building capacity or a maximum of 100 attendees.

South Bay United filed suit, arguing that allowing certain entities to open prior to religious organizations violated the Free Exercise Clause of the First Amendment. *South Bay United*, 590 U.S. ---, No. 19A1044, at *1. The District Court and the Ninth Circuit each denied South Bay's request for preliminary injunctive relief. They applied for an injunction to the United States Supreme Court, which also denied injunctive relief.

Chief Justice Roberts concurred with the Court's denial, stating first that the restrictions on places of worship "appear consistent with the Free Exercise Clause of the First Amendment."

*Id.*, at *2. Speaking to the issue that split the Seventh and Ninth Circuits from the Sixth Circuit, he reasoned:

> Similar or more severe restrictions apply to comparable secular gatherings, including lectures, concerts, movie showings, spectator sports, and theatrical performances, where large groups of people gather in close proximity for extended periods of time. And the Order exempts or treats more leniently only dissimilar activities, such as operating grocery stores, banks, and laundromats, in which people neither congregate in large groups nor remain in close proximity for extended periods.

*Id.*

Like California's order, Kentucky's Mass Gatherings Order complies with the First Amendment because it is content neutral. Plaintiffs here rely on the same flawed reasoning rejected by the Supreme Court to argue otherwise. (Doc. 6-1, Page ID#: 91-92.) Their claims must fail, because Kentucky's Mass Gatherings Order, like California's order, applies "similar or more severe restrictions . . . to comparable secular gatherings, including lectures, concerts, movie showings, spectator sports, and theatrical performances, where large groups of people gather in close proximity for extended periods of time." *South Bay United*, 590 U.S. ---, No. 19A1044, at *2.[2]

Chief Justice Roberts' Opinion directly rejects the reasoning in *Maryville Baptist Church v. Beshear* and *Roberts v. Neace*, Consolidated Appeal Nos. 20-5465 and 20-5427, that led the Sixth Circuit to find a likelihood of success with respect to First Amendment challenges to the Mass Gatherings Order. Indeed, both the Petitioners and dissenters in *South Bay United* cited to these Sixth Circuit Opinions, which the Supreme Court has now rejected. In *Maryville Baptist*,

---

[2] The Supreme Court's analysis applies with even greater force in the instant matter. Mass gatherings of protest truly are dissimilar to groceries, banks, and laundromats, or any of the other *life sustaining* entities excluded from the Mass Gatherings Order. Concerts and sporting events – treated similarly under the Order – offer the best comparison, but even those events maintain controls allowing for safer attendance, such as ticket purchasing, designated seating and requiring masks upon entry. As we have unfortunately witnessed over the past week, protests cannot provide any of those safety measures.

3

The Sixth Circuit reasoned that the mass gatherings prohibition discriminated against churches because it did not apply to "life-sustaining" operations such as "law firms, laundromats, liquor stores, gun shops, airlines, mining operations, funeral homes and landscaping." But Chief Justice Roberts specifically opined that excluding these services did not run afoul of the First Amendment, because "grocery stores, banks, and laundromats" are "dissimilar activities . . . in which people neither congregate in large groups nor remain in close proximity for extended periods." *South Bay United*, 590 U.S. ---, No. 19A1044, at \*2.

Likewise, the Sixth Circuit's reasoning in its May 23 and May 29 orders in the instant matter is flawed. In its May 23 order partially granting injunctive relief pending the appeal, the Court relied on its opinion in *Maryville Baptist Church*, stating, "The same logic applies here – and indeed with more force. Because the Order permits citizens to gather in retail stores, airports, parking lots, *and churches*, but does not permit them to gather for a protest, it discriminates against political speech." (Doc. 29, Page ID#: 387.) That is precisely the logic that Supreme Court rejected. Under the *South Bay United* analysis, the Mass Gatherings Order does not target political speech because it applies to "similar activities." As such, the restriction is a content-neutral time, place and manner restriction. For the same reason the California Order passed First Amendment scrutiny with regard to religious activity, the Mass Gatherings Order passes First Amendment scrutiny with regard to speech and assembly.[3]

---

[3] To be sure, Defendants' position regarding First Amendment protest remains the same as it has been throughout these cases: Defendants have no intention of enforcing the Mass Gatherings Order to prevent First Amendment-protected protests. That is not to say that the Kentucky State Police or other law enforcement officials will not enforce *other* content-neutral laws to ensure the safety of the public, including the safety of the Governor and his family, which was threatened in a recent protest that some Plaintiffs attended.

4

### B. Federal Courts Must Afford State Officials Latitude To Enact Measures Like The Mass Gatherings Order.

Chief Justice Roberts' Opinion also holds that, under our federalist system of government, elected state officials – and not an unelected judiciary – must be given latitude to respond to a public health emergency. Because Plaintiffs invite this Court to engage in an impermissible second-guessing of the Mass Gatherings Order, the Court should deny their motions.

The *South Bay United* Opinion applies and reaffirms longstanding Supreme Court precedent, including *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), in directing courts to refrain from "second-guessing" public health measures. *Id*. The Opinion observed that the Constitution "principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" *Id.* (citing *Jacobson*, 197 U.S. at 38). And because emergency public health measures responding to COVID-19 address a "dynamic and fact-intensive matter . . . 'fraught with medical and scientific uncertainties,'" the latitude afforded to the Governors "must be especially broad." *Id*. (citing *Marshall v. United States*, 441 U.S. 417, 427 (1974)).

Chief Justice Roberts found that "Where those broad limits are not exceeded, they should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *Id.* (citing *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545 (1985)). In closing, Chief Justice Roberts wrote:

> That is especially true where, as here, a party seeks emergency relief in an interlocutory posture, while local officials are actively shaping their response to changing facts on the ground. The notion that it is "indisputably clear" that the Government's limitations are unconstitutional seems quite improbable.

5

*Id.*, at *2-3.

The *South Bay United* Opinion thus pays respect to what Justice Hugo Black deemed "Our Federalism." *Younger v. Harris*, 401 U.S. 37, 44–45 (1971). As Justice Black explained, ours "is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 44; *see also id.* at 44-45 ("It should never be forgotten that this slogan, 'Our Federalism,' born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future.").

Kentucky's Mass Gatherings Order is precisely the kind of emergent public health response, based on developing scientific evidence, that the federal courts must leave to the states. To the extent the Sixth Circuit suggested otherwise in its May 29 order, that order is no longer good law, in light of the intervening *South Bay United* Opinion. Specifically, when the Sixth Circuit remanded this case, it stated that it could not "determine what the facts are concerning a prohibition on in-person protests and whether there are features of large in-person protests that distinguish them from other mass gatherings, such as retail venues, which the Order permits, and churches, which our prior decisions permit." (Doc. 31.)

The *South Bay United* Opinion expressly forbids this sort of probing review by federal courts during the emergency. First, the Supreme Court has made clear that retail venues are dissimilar from the mass gatherings prohibited by the order. *South Bay*, 590 U.S. ---, No. 19A1044, slip op. at 2. Second, the Opinion prohibits the "second guessing"

of public health measures that do not exceed the broad limits afforded under *Jacobson*. *Id*.

Under *South Bay United*, it would be inappropriate for this Court to make factual findings regarding any differences in retail and mass gatherings, because those activities may be treated differently under the Constitution. The Court should deny the motions for these reasons.

## II. The Supreme Court's Order Makes Clear That Plaintiffs' Emergency Request For Discovery Is Unnecessary And Inappropriate.

In light of the above, Plaintiffs' emergency request for discovery in the form of a deposition of Dr. Stack is particularly unnecessary and inappropriate.

First, Chief Justice Roberts's Opinion in *South Bay*, 590 U.S. ---, No. 19A1044, makes clear that the Orders at issue here pass constitutional muster and should not be enjoined. No amount of discovery will change that outcome. Moreover, the only purpose that could be served by such onerous discovery would be to second-guess the Governor's decisions, as Plaintiffs have effectively admitted. Plaintiffs want to press questions about why public health officials have imposed the restrictions they have imposed and drawn the distinctions they have drawn, because Plaintiffs intend to invite the Court to sit in judgment of those decisions.

The Court must decline the invitation. Especially during an emergency, state officials "should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *Id.* (quoting *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U. S. 528, 545 (1985)).

Thus, it would be improper to saddle Dr. Stack with a deposition as he advises the Governor and other officials on the proper response to this public health emergency. State officials must be granted broad discretion to formulate these policies, without second-guessing by the courts. That is particularly true where, as here, state officials have taken extraordinary steps to ensure that individuals can exercise their constitutional rights while remaining safe.

### III.     Plaintiffs' Motion For A Deposition Fails To Comply With The Rules.

Again, the *South Bay United* decision makes clear that a deposition is an improper attempt to second-guess an emergency public health measure that is consistent with the First Amendment.  However, even if that were not true, the Court should deny the motion to conduct a deposition because the motion fails to comply with Federal Rules of Civil Procedure, according to which a motion "must state with particularity the grounds for seeking the order," Fed. R. Civ. P. 7(b)(1)(B), and must provide some justification consistent with the purposes of discovery, Fed. R. Civ. P. 30(a)(2) (incorporating Fed. R. Civ. P. 26(b)(1) and (2)).

Plaintiffs do not cite a single reason that their Motion should be granted, contrary to these Rules. Nor could they. Dr. Stack submitted a detailed declaration regarding the spread of COVID-19 and the necessity of proper social distancing to the Court on May 19th as part of the Defendants' Response to the Plaintiffs' Motion for Preliminary Injunction. Accordingly, the record in this matter, including this Declaration, is sufficiently developed for the Court to conduct any factual analysis that could be relevant to the pending motions.

At a minimum, to be entitled to the relief they seek, Plaintiffs must identify some disputed material factual issue that would be resolved by deposition; they have not done so. Moreover, as Plaintiffs and this Court are well aware, Dr. Stack has extremely limited availability given his role in managing the Commonwealth's response to an ongoing public health emergency. Accordingly, Plaintiffs must put forward some justification why the factual issues they believe are disputed – and at which Defendants can only guess, given Plaintiffs' failure to file a proper motion – cannot be resolved through stipulation, interrogatories, or an additional declaration, rather than a deposition, which is unduly burdensome and inconvenient under the circumstances. *See* Fed. R. Civ. P. 26(b)(2)(C)(1) (prohibiting discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive").

The Motion also fails to comply with this Court's Local Rule 37.1, because Plaintiffs made no effort to contact Defendants prior to serving the discovery motion. Had Plaintiffs done so, and had they put forward a single material factual issue that they believe is disputed, Defendants would have endeavored in good faith to resolve that issue. Put simply, Plaintiffs' decision to file a motion with no explanation and no effort to resolve any dispute suggests gamesmanship.

Given the decision of the Supreme Court in *South Bay United*, as well as Plaintiffs' failure to give any reasons supporting their motion, their failure to identify a single factual issue that could be resolved by a deposition, and their failure to seek in good faith to work with Defendants to resolve any factual issue prior to filing the motion, the Court should not permit the deposition.

## CONCLUSION

The United States Supreme Court has issued clear guidance. *First*, the public health measures enacted by Governors in response to COVID-19 require greater deference than the Sixth Circuit allowed in this matter, and in *Maryville Baptist Church* and *Roberts*. *Second*, restrictions on all mass gatherings do not run afoul of the First Amendment because they exclude grocery stores, banks or laundromats. Public health officials in California and Kentucky have advised that these are dissimilar activities to be treated differently in the response to COVID-19. *Jacobson* requires deference to that determination. As a result, this Court should deny Plaintiffs' motion for preliminary injunctive relief and their motion for emergency discovery to depose Dr. Stack.

Respectfully submitted,

/s/ Taylor Payne
La Tasha Buckner
General Counsel
S. Travis Mayo
Chief Deputy General Counsel
Taylor Payne
Deputy General Counsel
Laura Tipton
Deputy General Counsel
Marc Farris
Deputy General Counsel
Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
LaTasha.Buckner@ky.gov
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov
marc.farris@ky.gov

*Counsel for Governor Andrew Beshear*

/s/ Wesley Duke (with permission)
Wesley W. Duke
Executive Director
Office of Legal Services
David T. Lovely
Deputy General Counsel
Cabinet for Health and Family Services
275 East Main Street 5W-A
Frankfort, KY 40621
(502) 564-7042
WesleyW.Duke@ky.gov
davidt.lovely@ky.gov

*Counsel for Secretary Eric Friedlander and Dr. Steven Stack*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2020, I electronically filed the foregoing Response via the Court's CM/ECF system, causing counsel of record to be served.

/s/ Taylor Payne
Taylor Payne