UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| TONY RAMSEK, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 3:20-cv-00036-GFVT |
| | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION** |
| | ) ) | **&** |
| | ) | **ORDER** |
| ANDREW BESHEAR, in his official capacity as Governor of Kentucky, *et al.*, | ) ) ) | |
| | ) ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This ongoing matter is a case about the constitutional implications of a governor's limitations on mass gatherings because of the Covid-19 pandemic. This matter is back before the Court following the Sixth Circuit's remand and charge that this Court "wade through" any remaining issues between the parties at hand. *Ramsek v. Beshear*, 989 F.3d 494, 500 (6th Cir. 2021). The Governor contends that the matter has been fully resolved, while the Plaintiffs argue that this Court must address several additional issues. For the reasons set forth below, the Court will dissolve the injunction in this case and permit Plaintiffs to move for reasonable attorney's fees under 42 U.S.C. § 1988.

I

On March 6, 2020, Governor Andrew Beshear issued Executive Order 2020-215, declaring a state of emergency because of the Covid-19 pandemic. [R. 1 at 5.] Two weeks later, on March 19, acting Secretary of the Cabinet for Health and Family Services Eric Friedlander issued an order prohibiting "mass gatherings." [R. 47 at 2.] These prohibited mass gatherings

included "any event or convening that brings together groups of individuals, including, but not limited to community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities." [R. 1 at 6.] The Order exempted a number of activities from prohibition, including "normal operations at airports, bus and train stations, medical facilities, libraries, shopping malls and centers, or other spaces where persons may be in transit." *Id.* "[T]ypical office environments, factories, or retail or grocery stores where large numbers of people are present, but maintain appropriate social distancing[]" were also expressly exempt from the order. *Id.* Protests were not included in this list of exemptions. [R. 47 at 2.]

On April 15, approximately 100 protestors organized and participated in a "re-open Kentucky" protest at the state Capitol in Frankfort during Governor Beshear's daily press conference. [R. 1 at 9.] Governor Beshear, in response, took steps to minimize the impact of the protests on his daily press conferences. [R. 47 at 2.] The Kentucky State Police placed saw-horse barriers on the patio of the Capitol, encircled the lawn outside of the Governor's office with yellow tape, and placed a sign on the saw-horse barriers that read, "[p]ursuant to 200 K.A.R. 3:020, the Kentucky State Police has deemed this area a restricted zone. No one is permitted past this point. Failure to adhere to this regulation may result in Criminal Penalty under K.R.S. 511.070." *Id.* at 2-3. The next day, April 16, Dr. Steven Stack, the State Health Commissioner, released a public announcement in regards to in-person mass gatherings at the Capitol. *Id.* Dr. Stack's public announcement created an alternative option for people to protest at the Capitol grounds, essentially allowing people to drive-in and drive-through the top floor of the Capitol parking garage. *Id.* Participants, however, "must remain in their vehicles, in

designated parking areas and follow Centers for Disease Control and Prevention (CDC) recommendations." *Id.*

On May 2, 2020, Plaintiffs, all four Kentucky residents deeply concerned about the Governor's actions in response to Covid-19, attempted to participate in a peaceful "Re-Open Kentucky" protest at the state Capitol in Frankfort. [R. 1 at 12.] According to Plaintiffs, their attempts to utilize the designated zone created by Dr. Stack at the parking garage were squashed because Kentucky State Police blocked the entrance to the garage, thereby making the alternative option for protesting inaccessible. *Id.* Moreover, Plaintiffs allege that the Kentucky State Police blocked the streets around the Capitol, and eventually, the entire perimeter of the protest. *Id.* at 12-13. Defendants disagreed with these allegations, explaining that certain entrances and exits were blocked for orderly flow of traffic in consideration of social distancing and safety protocols. [R. 47 at 3.] Defendants contended that the designated protest areas were accessible on May 2. *Id.*

Consequently, this matter commenced on May 10, 2020, when Tony Ramsek and his three fellow plaintiffs filed suit against Kentucky's Governor, the Secretary of the Kentucky Cabinet for Health and Family Services, and the Commissioner of the Kentucky Department for Public Health, all in their official capacities only. [R. 1 at 1-2.] The Plaintiffs' complaint alleged that the Defendants, via their Executive Order, had violated Plaintiffs' First Amendment rights to free speech, freedom of assembly, and Plaintiffs' procedural due process rights. *Id.* at 16, 21, 24. On May 12, Plaintiffs moved for a Temporary Restraining Order, which the Court ultimately denied on May 15. [R. 47 at 4.]

Following a failed application and negotiation between Plaintiffs and Defendants in relation to holding another event at the Capitol in late May, the Court denied Plaintiffs'

3

Emergency Motion for Preliminary Injunction, finding that Plaintiffs lacked standing. *Id.* at 4-5. Plaintiffs appealed this decision and moved for this Court to enter an injunction pending appeal, which was also denied. *Id.* On May 23, the Sixth Circuit issued an order concluding that the Plaintiffs had standing, and granted, in part, their motion for an injunction pending appeal. *Id.* On May 29, the Sixth Circuit vacated this Court's order denying Plaintiffs' preliminary injunction and determination that Plaintiffs lacked standing. *Id.* The Sixth Circuit then remanded the case for additional findings of fact and conclusions of law. *Id.*

Following expedited discovery to develop the factual record, which included a deposition of Dr. Stack, this Court ordered simultaneous briefing concerning the prohibition on in-person protests. *Id. a*t 5-7. The Court granted Plaintiffs' Motion for a Preliminary Injunction on June 24, 2020, thereby limiting enforcement of the Executive Order. *Id.* at 24. Governor Beshear appealed this Court's decision, but before it could be argued in the Sixth Circuit, the Governor rescinded his Order. [R. 62 at 6.] Subsequently, the Sixth Circuit ordered briefing on whether a live controversy still exists. *Id.* While Defendants' brief urged the Sixth Circuit to vacate the preliminary injunction, the Court declined to do so. *Id.* at 10. The Sixth Circuit concluded that the appeal was moot, and, as a consequence, dismissed the appeal for lack of jurisdiction. *Id.* The case was remanded to this Court "to decide what further relief, if any, is appropriate." *Id.* The Court ordered simultaneous briefing from the parties on the question of whether any further relief is appropriate. [R. 63.] This matter, having been fully briefed, is now ripe for review.

**II**
**A**

The standard for a preliminary injunction is essentially the same as for a permanent injunction, but with one key distinction: to be granted a permanent injunction, the plaintiff must show actual success on the merits rather than mere likelihood of success. *Winter v. NRDC, Inc.*,

555 U.S. 7, 32 (2008) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987)). It is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. *Id*.

The plaintiffs urge the Court to "enter a permanent injunction or, in the alternative, dissolve (rather than vacate) the preliminary injunction . . ." [*See* R. 65 at 1.] The standard for a permanent injunction, however, is a higher one than the standard for a preliminary injunction. Although the Plaintiffs are correct that the preliminary injunction was "merits-based," the decision to grant the June 24 preliminary injunction was just that and no more. *Id*. While this Court did consider "whether the movant has shown a strong likelihood of success on the merits," this Court's consideration of likelihood of success is distinctly different from an *actual* success on the merits. *Ramsek v. Beshear*, 468 F. Supp. 3d 904, 914 (E.D. Ky. 2020) (emphasis added).

The Plaintiffs confuse an order granting a preliminary injunction that considered the merits of the case with a final ruling on the merits as a matter of law. The Executive Order at issue had been withdrawn pending appeal of the preliminary injunction, thus prompting the Sixth Circuit to render that specific issue as moot. *See Ramsek*, 989 F.3d at 500. Thus, there being no live case or controversy, the merits of the claim could not be reached. *See* U.S. CONST. art. III, § 2. Actual success on the merits by the plaintiffs was never reached, and a permanent injunction therefore is not appropriate.

B

Neither is vacatur appropriate in this instance, as the Sixth Circuit has already addressed the Defendant's request to vacate the preliminary injunction. The Sixth Circuit made clear that

Governor Beshear is not entitled to *Munsingwear* vacatur because his withdrawal of the Executive Order cannot act as "both a shield to defend (on mootness grounds) against Ramsek's request that we affirm the preliminary injunction, and then as a sword to strike it down through vacatur of the decision in the district court." *Ramsek,* 989 F.3d at 501. This Court is bound by the appellate court's declination to vacate the preliminary injunction.

## C

As a matter of course, an injunction may dissolve when a case becomes moot and the injunction is no longer necessary. *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 540 (6th Cir. 2019). Mootness means Article III jurisdiction of the federal judiciary extends only to actual cases and controversies. *McPherson v. Mich. High School Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc). "The case-or-controversy requirement 'subsists through all stages of federal judicial proceedings, trial and appellate.'" *Ermold v. Davis*, 855 F.3d 715, 718 (6th Cir. 2017) (quoting *Chafin v. Chafin*, 568 U.S. 165, 173 (2013)). A case is moot, then, when the issues presented are no longer 'live,' or the parties lack a legally cognizable interest in the outcome. *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Therefore, the mootness inquiry must be made at every stage of the case. *McPherson*, 119 F.3d at 458.

There are, however, two exceptions to the mootness doctrine. *Resurrection School v. Hertel*, 11 F.4th 437, 449 (6th Cir. 2021). First, voluntary cessation of the challenged conduct does not moot a case unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968). "When a defendant claims that its voluntary cessation of the challenged activity moots a case, it bears the burden of proving mootness." *Sherwood v. Tennessee Valley Authority*, 842 F.3d 400, 405 (6th Cir. 2016) (citing *United States v. Dairy Farmers of Am., Inc.*,

426 F.3d 850, 857 (6th Cir. 2005)).  Second, a case will not become moot if the injury is "capable of repetition, yet evading review." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007).  This exception applies when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again."  *Hertel*, 11 F.4th at 452 (quoting *Chirco v. Gateway Oaks, LLC.*, 384 F.3d 307, 309 (6th Cir. 2004)).

The Sixth Circuit has already rendered the Governor's appeal on the preliminary injunction matter moot.  *Ramsek*, 989 F.3d at 496.  The appellate court did not, however, deem the entire controversy moot.  The Court's duty, on remand, is to make a determination of what further relief, if any, is necessary.  Here, the Governor asks the Court to render this entire matter moot because Mr. Ramsek has no claim relating to threat of prosecution.  [R. 64 at 5.]  The Court must, however, consider whether an exception to the mootness doctrine applies.

The Plaintiffs, as previously discussed in relation to the considerations of a permanent injunction, do not necessarily contend that a live controversy still exists, but put forth explanations for why further relief is necessary.  The Court has already set aside the request for a permanent injunction because actual success on the merits was not reached.  Plaintiffs, still concerned with an alleged possibility of prosecution for violating Governor Beshear's order, urge an alternative form of relief.  [R. 65 at 1, 5-6.]  They ask this Court to dissolve the injunction, but with that, to also "expressly note that the previously entered injunction protects protestors against prosecution."[1]  *Id.* at 1.

---

[1] The Court declines to expressly hold, as Plaintiffs request, that the previously entered injunction protects protestors against prosecution until the statute of limitations period runs on December 12, 2021.  In their decision remanding this case back to district court, the Sixth Circuit expressed concern that Governor Beshear's commitment to not prosecuting Plaintiffs may not give Plaintiffs the security they deserve because Kentucky State Police or county

7

First, the Court will address whether this case as a whole is moot, and if so, whether an exception applies.  Here, not only is the Order "off the books," but the Governor has repeatedly made it clear that he has no intention of enforcing any violations of the Order prior him being enjoined.  The Governor's voluntary cessation, however, does not moot this case unless it is abundantly clear that the Order could not reasonably be expected to recur.  "[S]uch self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990) (quoting *Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir. 1988)).

The Governor has been ardent that, not only will he refrain from enforcing his rescinded order, but that he will not be reinstating it either.  The Court could analyze the Governor's executive history to determine whether his promises are to be believed or not.  There is, however, another way in which the Court may consider the likelihood of the Executive Order being reinstated.  Governor Beshear had much more extensive and autonomous power when the order prohibiting "mass gatherings" was issued in March 2020.  During the 2021 Regular Session, the Kentucky Legislature "pass[ed] H.B. 1, S.B. 1, and S.B. 2 which restrict the Governor's ability to take unilateral action during declared emergencies." *See Cameron v. Beshear*, 2021-SC-0107-I, 2021 Ky. LEXIS 240, at *3 (Ky. Aug. 21, 2021).  The bills became effective on February 2, 2021, following a veto override by the General Assembly.  *Id*.  On August 21, the Kentucky Supreme Court upheld the laws because they were lawfully passed and

---

attorneys might still prosecute misdemeanor violations. *See Ramsek*, 989 F.3d at 500.  The Sixth Circuit also noted, however, that "the federal courts may not be positioned to grant Ramsek the freedom he seeks from the threat of arrest and prosecution." *Id.*  It was left to this Court to "wade through" these issues on remand. *Id.*  It is a fundamental legal principal that "only parties can be bound by prior judgments." *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011).  In general, "[a] 'party' to litigation is '[o]ne by or against whom a lawsuit is brought,'" *Id.* (quoting *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009).  Because neither the Kentucky State Police nor any county attorney is a party to this suit, however, the Court declines to issue a holding intended to bind the actions of third parties not privy to the case in hand.

ordered the trial court to dissolve an injunction that prevented the laws from going into effect. *Id.* at 30.

This Court, following the Kentucky Supreme Court's decision, found in *Pleasant View* that another one of Governor Beshear's executive orders, similar to the one at issue in the present case, could not be reimposed. *Pleasant View Baptist Church v. Beshear*, 2021 WL 4496386 (E.D. Ky. Sept. 30, 2021). In *Pleasant View*, there was no "reasonable expectation 'that the same complaining party would be subjected to the same action again,' because Governor Beshear no longer ha[d] the authority to promulgate Covid-19 executive orders." *Id.* at *6 (quoting *Chirco v. Gateway Oaks, L.L.C.*, 384 F.3d 307 309 (6th Cir. 2004)). Therefore, the *Pleasant View* Plaintiffs' request that the Court declare the Governor's Executive Order unconstitutional was moot. *Id.*

Moreover, this case is similar as well to *Roberts v. Beshear*, where the court held that the Plaintiffs' claims were moot because of the Kentucky General Assembly's new restrictions on Executive Power. 2021 WL 3827128, at *4 (E.D. Ky. Aug. 26, 2021). The court in *Roberts* reasoned that "[e]ven if Governor Beshear wanted to invoke another mass gathering ban that effectively shut down in-person church worship, or issue another travel ban, the measures taken by the General Assembly prevent him from lawfully doing so." *Id.*

The Court sees no reason to abandon the consistency of these recently decided cases that are similar to the present one. It is clear that, given the new circumstances, Governor Beshear's issuance of a burdensome executive order could not be reasonably expected to recur. Thus, the Court finds that the Defendants here, claiming mootness through voluntary cessation, have met their burden of proving mootness. Furthermore, the actions taken by the Kentucky General

9

Assembly also make it unlikely that Governor Beshear's actions are actually "capable of repetition, yet evading review." Therefore, the case in whole is moot.

**D**

The next issue is whether the Plaintiffs are entitled to prevailing party status, and thus reasonable attorney's fees, pursuant to 42 U.S.C. § 1988. "[F]ederal courts typically abide by the 'American Rule,' which dictates that each party pay for its own attorneys' fees, except when explicitly provided for by statute." *Planned Parenthood Sw. Ohio Region*, 931 F.3d at 538. The Civil Rights Attorney's Fee Rewards Act, 42 U.S.C. § 1988, is one such exception aimed at "enabling vigorous enforcement of modern civil rights legislation[.]'" *Id.* (quoting S. Rep. No. 94-1011, at 4 (1976)). The Act states, in relevant part, that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, . . . ." 42 U.S.C. § 1988(b). "The provisions in 42 U.S.C. § 1988 aim to ensure the availability of competent and effective counsel for the enforcement of civil rights and thus allow for reasonable fees to prevailing parties." *Planned Parenthood Sw. Ohio Region*, 931 F.3d at 546.

The Court's determination of prevailing-party status for awards under attorney-fee-shifting statutes such as 42 U.S.C. § 1988 is a legal question. *Radvansky v. City of Olmstead Falls*, 496 F.3d 609, 619 (6th Cir. 2007). Generally, "a final decision on the merits . . . determines who prevails in the action for purposes of § 1988(b)." *Sole v. Wyner*, 551 U.S. 74, 77 (2007). Accordingly, "when a claimant wins a preliminary injunction and nothing more, that usually will not suffice to obtain fees under § 1988." *McQueary v. Conway*, 614 F.3d 591, 604 (6th Cir. 2010). The Sixth Circuit, however, has recognized occasional exceptions to that rule. *Id*.

In determining prevailing party status, the Court must ask whether there is a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 792-93 (1989). Success on a single claim is enough to gain prevailing party status, even if the Court does not grant plaintiff the primary relief he sought. *Id.* The material alteration of the legal relationship must be judicially sanctioned, and that judicial success must be based, at least in part, on the merits of the claim. *Planned Parenthood Sw. Ohio Region*, 931 F.3d at 538-39. In other words, a plaintiff cannot prevail by resolving the case through merely catalyzing a change in the defendant's behavior, the change has to be enduring. *Id.*; *see also Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019). Finally, a plaintiff granted a preliminary injunction that is "reversed, dissolved, or otherwise undone by the final decision in the same case" cannot be a prevailing party. *Sole*, 551 U.S. at 83. In other words, the court-ordered change in the legal relationship must be enduring and irrevocable because § 1988 requires lasting relief. *McQueary*, 614 F.3d at 597.

The Supreme Court in *Sole* did not answer the question of whether a claimant is entitled to attorneys' fees when it secures a preliminary injunction but no final decision on the merits. *Planned Parenthood Sw. Ohio*, 931 F.3d at 540. The Sixth Circuit, having only considered the matter a handful of times, has looked to sister circuits to form a framework. *See, e.g., Planned Parenthood Sw. Ohio*, 931 F.3d at 546 (affirming the district court's ruling that the plaintiffs had prevailed because the more-than-decade-long preliminary relief provided lasting benefit to the plaintiffs based on the substantive merits of at least one of their claims); *Dearmore v. City of Garland*, 519 F.3d 517, 526 (5th Cir. 2008) (finding that a city's amending of an ordinance after being preliminarily enjoined, paired with that amending subsequently mooting the case, was

11

sufficient to establish prevailing party status for the plaintiff); *Watson v. County of Riverside*, 300 F.3d 1092, 1097 (9th Cir. 2002) (the Court affirming the district court's ruling that plaintiffs were a prevailing party where the plaintiff succeeded in receiving a preliminary injunction, even though the case had eventually become moot by the time it reached trial).

Here, as the Court has previously discussed, there was no final decision on the merits of the claim. The Governor's office had withdrawn the Executive Order and the Governor can no longer unilaterally issue executive orders, thus mooting the preliminary injunction matter. We turn, then, to consider if this case falls within the scope of an exception to the general rule that final decisions on the merits determine prevailing party status. The ultimate question is whether there was a material alteration of the legal relationship between the Plaintiffs and Defendant. *See Tex. State Teachers Ass'n*, 489 U.S. at 792-93.

The Governor's office suggests that their voluntary rescindment of the Executive Order means that any change in their legal relationship with the Plaintiffs here was on the Defendant's own accord, and was not judicially sanctioned. [R. 64 at 19.] Furthermore, the Defendants contend that neither this Court, nor the Sixth Circuit, has ruled on the merits of Plaintiffs' claims because the case never reached the permanent injunction stage. *Id.* These facts, however, neither change nor outweigh the other facts in this case. After the Sixth Circuit found there to be standing and remanded the case, this Court directed the parties to file simultaneous briefing on the issue and held a hearing earlier this year on June 4. *Ramsek*, 468 F. Supp. 3d at 910. Then, on June 24, the Court issued a preliminary injunction, which as already discussed, was based on the merits, or, more specifically, based on the Plaintiffs' likelihood of final success on the merits.

Accordingly, this seems to fulfill at least two requirements of the material alteration analysis. The preliminary injunction was judicially sanctioned. And it was based, at least partly,

12

on the merits of the claim, because the purpose of the simultaneous briefing and the June 4 hearing were to consider the factors of a preliminary injunction, the first of which being likelihood of success on the merits. Ultimately, the claim for permanent injunctive relief was not decided on the merits because it had become moot, not because of lack of entitlement. What really matters, however, is that Mr. Ramsek and the other plaintiffs got the relief they were seeking: an injunction against the executive branch from enforcing the Governor's Order. And then, because of that injunction, the Governor rescinded the Order. *Ramsek*, 989 F.3d at 501 (finding that Governor Beshear "withdrew the Order before his appeal could be resolved" after he "lost in the district court"). Furthermore, the change was enduring because it provided the Plaintiffs "with everything they asked for" by way of the Order being rescinded and Plaintiffs being promised that it would not be reinstated. *Miller*, 936 F.3d at 448.

  This case is distinguishable from a circumstance in which a "claimant wins a preliminary injunction and nothing more." *McQueary*, 614 F.3d at 604. Instead, Plaintiffs won a preliminary injunction that directly led to a change in behavior and assurances that previous executive orders would not be reissued. This case is directly comparable to Sixth Circuit precedent in similar cases pertaining to prevailing party determinations. *See, e.g.*, *Planned Parenthood Sw. Ohio*, 931 F.3d at 546; *see also Miller v. Davis*, 267 F. Supp. 3d 961, 1000 (E.D. Ky. 2017) (finding plaintiffs entitled to reasonable attorney's fees under § 1988 after preliminary injunction granted but matter subsequently became moot by change in law and was vacated by district court at the direction of the Sixth Circuit) (aff'd *Miller*, 936 F.3d 442). In *Planned Parenthood*, a preliminary injunction had been granted based on the likelihood of success on the merits, and the plaintiffs were awarded prevailing party status. 931 F.3d at 546. The present case is similar to

*Planned Parenthood*, and Plaintiffs are therefore permitted to move, pursuant to F.R.C.P. 54(d)(2)(A) and L.R. 54.4, for reasonable attorney's fees under 42 U.S.C. § 1988.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Although the Court declines to vacate the preliminary injunction, the injunction in this matter, entered on June 24, 2020, **[R. 47]** is **DISSOLVED** because the matter has become moot; and

2. Plaintiffs, as prevailing parties, may move for reasonable attorneys' fees under 42 U.S.C. § 1988 no later than **thirty (30) days** from the entry of this order.

This is the 2d day of November, 2021.

Gregory F. Van Tatenhove
United States District Judge