UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| TONY RAMSEK, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 3:20-cv-00036-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ANDREW BESHEAR, in his official | ) | **&** |
| capacity as Governor of Kentucky, *et al*., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on the Plaintiffs' Motion for Attorney Fees and Costs pursuant to 42 U.S.C. § 1988.  [R. 70.]  For the reasons that follow, this motion will be GRANTED IN PART and DENIED IN PART.

**I**

On March 6, 2020, Governor Andrew Beshear issued Executive Order 2020-215, which declared a state of emergency because of the Covid-19 pandemic.  [R. 1 at 5.]  On March 19, Eric Friedlander, acting Secretary of the Cabinet for Health and Family Services, issued an order prohibiting "mass gatherings," which included "any event or convening that brings together groups of individuals, including, but not limited to community, civic, public, leisure, faith-based, or sporting events; parades; concerts; festivals; conventions; fundraisers; and similar activities." [R. 1 at 6; R. 47 at 2.]  The Order exempted certain activities, including "normal operations at airports, bus and train stations, medical facilities, libraries, shopping malls and centers, or other spaces where persons may be in transit."  *Id.*  The order also exempted "typical office environments, factories, or retail or grocery stores where large numbers of people are present,

but maintain appropriate social distancing[].” *Id.* Protests were not included in the list of exemptions. [R. 47 at 2.]

On April 15, during Governor Beshear's daily press conference, approximately 100 protestors convened and participated in a "Re-open Kentucky" protest in Frankfort at the state Capitol. [R. 1 at 9.] In response, Governor Beshear took steps to minimize the impact of the protests on his daily press conferences. [R. 47 at 2.] The Kentucky State Police placed sawhorse barriers on the patio of the Capitol, encircled the lawn outside of the Governor's office with yellow tape, and placed a sign on the sawhorse barriers that read, "[p]ursuant to 200 K.A.R. 3:020, the Kentucky State Police has deemed this area a restricted zone. No one is permitted past this point. Failure to adhere to this regulation may result in Criminal Penalty under K.R.S. 511.070." *Id.* at 2–3. The following day, April 16, Dr. Steven Stack, the State Health Commissioner, released a public announcement regarding in-person mass gatherings at the Capitol. *Id.* Dr. Stack's public announcement created an alternative option for people to protest at the Capitol grounds by permitting people to drive-in and drive-through the top floor of the Capitol parking garage. *Id.* Participants, however, were required to "remain in their vehicles, in designated parking areas and follow Centers for Disease Control and Prevention (CDC) recommendations." *Id.*

On May 2, 2020, Plaintiffs, four Kentucky residents who were concerned about Governor Beshear's actions in response to the Covid-19 pandemic, attempted to participate in a peaceful "Re-Open Kentucky" protest at the state Capitol. [R. 1 at 12.] However, according to the Plaintiffs, their attempts to protest using the designated zone created by Dr. Stack at the parking garage were thwarted because Kentucky State Police blocked the entrance to the garage, which made the alternative option for protesting inaccessible. *Id.* Furthermore, Plaintiffs allege that

the Kentucky State Police blocked the streets around the Capitol, and eventually, the entire perimeter of the protest. *Id.* at 12–13. Defendants contested these allegations, explaining that certain entrances and exits were blocked for orderly flow of traffic to account for social distancing and safety protocols. [R. 47 at 3.] Defendants contended that the designated protest areas were accessible on May 2. *Id.*

This matter commenced on May 10, 2020, when Plaintiff Tony Ramsek and his three fellow plaintiffs filed suit against Kentucky's Governor, the Secretary of the Kentucky Cabinet for Health and Family Services, and the Commissioner of the Kentucky Department for Public Health, all in their official capacities only. [R. 1 at 1–2.] The Plaintiffs' Complaint alleged that the Defendants, via the Executive Order, had violated Plaintiffs' First Amendment rights to free speech, freedom of assembly, and Plaintiffs' procedural due process rights. *Id.* at 16, 21, 24. On May 12, Plaintiffs moved for a temporary restraining order, which the Court denied on May 15, and a preliminary injunction, which the Court permitted to proceed. [R. 47 at 4.]

Following a failed application and negotiation between Plaintiffs and Defendants in relation to holding another event at the Capitol in late May, the Court denied Plaintiffs' preliminary injunction motion, finding that Plaintiffs lacked standing. *Id.* at 4–5. Plaintiffs appealed this decision and moved for this Court to enter an injunction pending appeal, which was also denied. *Id.* On May 23, the Sixth Circuit issued an order concluding that the Plaintiffs had standing, and granted, in part, Plaintiffs' motion for an injunction pending appeal. *Id.*

On May 29, the Sixth Circuit vacated this Court's order denying Plaintiffs' preliminary injunction and determination that Plaintiffs lacked standing. *Id.* The Sixth Circuit then remanded the case for additional findings of fact and conclusions of law. *Id.*

3

On June 24, 2020, the Court granted Plaintiffs' Motion for a Preliminary Injunction, thereby limiting enforcement of the Executive Order. *Id.* at 24. Governor Beshear appealed this Court's decision, but before the case could be argued in the Sixth Circuit, the Governor rescinded his Order. [R. 62 at 6.] Subsequently, the Sixth Circuit ordered briefing on whether a live controversy still exists. *Id.* While Defendants' brief urged the Sixth Circuit to vacate the preliminary injunction, the Court declined to do so. *Id.* at 10. The Sixth Circuit concluded that the appeal was moot, and, as a consequence, dismissed the appeal for lack of jurisdiction. *Id.* The case was remanded to this Court "to decide what further relief, if any, is appropriate." *Id.* The Court ordered simultaneous briefing from the parties on the question of whether any further relief is appropriate. [R. 63.] On November 2, 2021, following briefing from the parties, the Court dissolved the preliminary injunction, found Plaintiffs to be prevailing parties, and permitted Plaintiffs to move for reasonable attorney's fees. [R. 67 at 14.] On November 24, Plaintiffs filed a Motion for Attorney's Fees.[1] [R. 70.]

---

[1] On November 8, Defendants filed a Motion for Partial Reconsideration of the Court's November 2, 2021, Memorandum Opinion & Order in which the Court found Plaintiffs to be prevailing parties. [R. 68.] Defendants argue they "were not given the opportunity to brief the issue of whether Plaintiffs are prevailing parties." [R. 68 at 1.] However, Defendants fail to provide any legal support to bolster their argument, and the argument itself is factually incorrect. Following the Court's order to file simultaneous briefing regarding what relief is appropriate in this case, Defendants devoted several pages to the argument that "Plaintiffs should not be considered a prevailing party under Section 1988." [R. 64 at 17.] Both parties briefed the prevailing party issue, and the Court considered the parties' briefing before finding the Plaintiffs to be prevailing parties. [R. 64 at 17–20; R. 65 at 6–8.] To the extent Defendants argue a hearing should have been held in determining the prevailing party or the award of attorney's fees, a district court is "not required to hold an evidentiary hearing before deciding the attorney fee dispute." *Boykin v. McCoy*, 384 F. App'x 579, 582 (9th Cir. 2010); *see also Harris Mkt. Resh. v. Marshall Mktg. and Commc'ns, Inc.*, 948 F.2d 1518, 1528 (10th Cir. 1991) (finding "court acted within its discretion in making a finding of the prevailing party without a hearing"). Furthermore, to the extent Defendants argue that "a claim for attorney's fees 'must be made by motion,'" and that Defendants must be provided the "opportunity for adversary submissions on the motion," Plaintiffs subsequently filed a Motion for Attorney's Fees, and Defendants responded. [R. 70; R. 71.] In response to the Plaintiffs' attorney's fees motion, Defendants devoted another six pages to the argument that Plaintiffs are not prevailing parties. [R. 71 at 5–10.] Therefore, Defendants' Motion for Reconsideration [R. 68] will be denied.

**II**

Pursuant to the Civil Rights Attorney's Fees Awards Act, the prevailing party in a civil rights action brought under 42 U.S.C. § 1983 may recover its reasonable attorney's fees. *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012). A "prevailing party" is one who succeeds on a significant issue "which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*¸ 506 U.S. 103, 109 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

Once a court determines a party prevailed and is entitled to attorneys' fees, the court must then determine what fees are owed and how much of those fees should be paid by the opposing party. Any award must be reasonable. *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). To determine reasonable attorneys' fees, a court must determine the "lodestar" amount, which is the attorney's reasonable hourly rate multiplied by the number of proven hours reasonably expended. *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013). "An award-seeking party should submit evidence of hours worked and the rates sought." *Northeast Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016).

**A**

Defendants first argue that Plaintiffs are not the prevailing party and therefore are not entitled to attorney's fees. [R. 71 at 5.] Defendants ask the Court to deny Plaintiffs' attorney fee request because "Plaintiffs did not secure the court-ordered, material, and irrevocable change in the legal relationship between the parties that attends prevailing-party status." *Id.* at 10.

**1**

Plaintiffs contend that the Governor's arguments that Plaintiffs are not a prevailing party are foreclosed by the law of the case doctrine. [R. 72 at 1.] Plaintiffs are correct that the Court already analyzed briefing by the parties on the prevailing parties issue and determined that

Plaintiffs were prevailing parties.  [R. 67 at 13–14.]  This determination was based, at least in part, on the Sixth Circuit's holding that "[w]ith the lifting of the Order, Ramsek has achieved the relief he sought through this litigation—the Order is 'off the books.'"  *Ramsek v. Beshear*, 989 F.3d 494, 499 (6th Cir. 2021) (quoting *Pleasant View Baptist Church v. Beshear*, 838 F. App'x 936, 938 (6th Cir. 2020)).  However, the doctrine does not prevent the Court from revisiting the prevailing party issue in this particular case.

"The doctrine of law of the case provides that the courts should not 'reconsider a matter once resolved in a continuing proceeding."  *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015) (quoting 18B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 4478 (4th ed. 2015)).  "The purpose of the law-of-the-case doctrine is to ensure that 'the *same* issue presented a second time in the *same case* in the *same court* should lead to the *same result*.'"  *Id.* (quoting *Sherley v. Sebelius*, 689 F.3d 776, 780 (D.C. Cir. 2012)); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (finding that courts "should be loathe to [revisit their own prior decisions] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice") (quotation marks omitted).

Generally, "once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case."  *Bowles v. Russell*, 432 F.3d 668, 676 (6th Cir. 2005) (quoting *Int'l Union of Operating Eng'rs, Local Union 103 v. Ind. Const. Corp.*, 13 F.3d 253, 256 (7th Cir. 1994)).  However, the doctrine operates more like a "management practice" for federal district courts, and prejudgment orders "can be reconsidered without restriction."  *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 169 F. App'x 976, 985 (6th Cir. 2006); *see also Bench Billboard Co. v. City of Covington, Ky.*, 547 F.

App'x 695, 704 (6th Cir. 2013) (finding "the law of the case doctrine is discretionary 'when applied to a coordinate court or the same court's own decisions'") (quoting *Bowles*, 432 F.3d at 677).

Here, although the Sixth Circuit found that Plaintiffs "achieved the relief [they] sought through this litigation," this finding was not made based upon full briefing, or any briefing for that matter, of the prevailing party issue.  The Sixth Circuit has only found the law of the case doctrine applicable in the preliminary injunction context "when the appellate panel considering the preliminary injunction has issued '[a] fully considered appellate ruling on an issue of law.'" *Howe*, 801 F.3d at 740 (quoting Wright et al. supra, § 4478.5).  Therefore, because the prevailing party issue itself was never briefed or decided by the Sixth Circuit, the doctrine does not apply to foreclose further argument as to the prevailing party issue.

This Court did decide the prevailing party issue following briefing from the parties. However, the doctrine operates more like a "management practice" in district court, which allows the Court to further analyze the prevailing parties issue based upon the parties' additional briefing.  *Waste Mgmt. of Ohio, Inc.*, 169 F. App'x at 985.  Furthermore, even if the law of the case doctrine applies, the Court may reconsider issues previously decided when "the evidence in a subsequent trial was substantially different; controlling authority has since made a contrary decision of law applicable to such issues; or the decision was clearly erroneous, and would work a substantial injustice.'" *In re Purdy*, 870 F.3d 436, 443 (6th Cir. 2017) (quoting *Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 766–67 (6th Cir. 1989)).  Here, while the briefing on the prevailing party issue is more robust, there is no argument that the evidence is "substantially different" or that "controlling authority has since made a contrary decision of law applicable to

such issues." *Id.*  Therefore, the Court will only reverse its prevailing party determination if the "decision was clearly erroneous, and would work a substantial injustice." *Id.*

**2**

Defendants argue that Plaintiffs are not prevailing parties because of the "limited relief obtained via the injunction pending appeal and preliminary injunction, and the fact that they did not 'prevail' on any of the relief sought in the Complaint." [R. 71 at 5.]  Defendants specifically argue that Governor Beshear "never enforced his mass gatherings order against peaceful in-person protests, and that order never prohibited drive-in or drive-through protests." *Id.* Defendants ask the Court to find that Plaintiffs are not prevailing parties and deny the motion, or "[a]t the very least…deny Plaintiffs' request for attorneys' fees from the date the Governor rescinded the mass gathering order." *Id.* at 10.

After review, the Court finds that its previous decision was not clearly erroneous and will not work a substantial injustice.  Defendants are correct that winning "a preliminary injunction and nothing more [] usually will not suffice to obtain fees under § 1988." *Id.* (quoting *McQueary v. Conway*, 614 F.3d 591, 604 (6th Cir. 2010)).  A preliminary injunction winner must demonstrate a "court-ordered, material, enduring change in the legal relationship between the parties" to be entitled to attorney's fees.  *Miller v. Caudill*, 936 F.3d 442, 448 (6th Cir. 2019); *see also Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 792–93 (1989) (finding a determination of prevailing party status turns on whether there is a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute").  "A party achieves a material alteration when it 'succeed[s] on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing suit." *Planned Parenthood Sw. Ohio Region v. Dewine*, 931 F.3d 530, 538 (6th Cir. 2019).

On review, the Court finds that there was "a court-ordered, material, and enduring change in the legal relationship between the parties" in this case. *Miller*, 936 F.3d at 448. The Plaintiffs received the relief they were seeking when the Court granted their motion for a preliminary injunction. [R. 47 at 24.] The Sixth Circuit agreed, finding that the Plaintiffs had "achieved the relief [they] sought through this litigation" because the challenged executive order is "off the books." *Ramsek*, 989 F.3d at 499. The preliminary injunction constituted a court-ordered change in the relationship between the parties. *See Miller*, 936 F.3d at 449.

In the Court's November 2021 Memorandum Opinion and Order, following briefing from the parties, the Court specifically addressed the prevailing party issue and found that there was a material change in the legal relationship between the Plaintiffs and Defendants because Plaintiffs obtained a preliminary injunction on the merits (or, more specifically, based on the Plaintiffs' likelihood of success on the merits). [R. 67 at 14.] "Having lost in the district court, Governor Beshear then withdrew the Order before his appeal could be resolved." *Ramsek*, 989 F.3d at 501. This means the claim for permanent injunctive relief could not be decided on the merits because the Governor rescinded the executive order, not because of a lack of entitlement on the Plaintiffs' part. *See Dewine*, 931 F.3d at 540 (citing approvingly to two sister circuits holding that dissolving an injunction when a case becomes moot "is not for 'lack of entitlement' and does not represent the kind of active, merits-based undoing the Supreme Court referred to in *Sole* [*v. Wyner*, 551 U.S. 74 (2007)]").

This case is procedurally similar to *Miller v. Caudill*, in which "[t]he district court issued a preliminary injunction…and shortly thereafter dismissed the case as moot, so that [an] injunction was all plaintiffs got." 936 F.3d at 448. There, as here, the change between the parties was court-ordered and caused by the preliminary injunction, the change was material

because it directly benefitted the Plaintiffs and altered how Defendants treated them, and finally,

the change was enduring and irrevocable because the injunction provided the court-ordered relief

the parties were seeking and Governor Beshear cannot reimplement the executive order.[2]

Accordingly, the Court finds that Plaintiffs are prevailing parties and will not disturb its previous

holding.

**B**

Plaintiffs request compensation for the work of three attorneys in this matter: Robert A.

Winter, Jr., Thomas Bruns, and Christopher Wiest.  The attorneys calculated their lodestars as

follows:

| Attorney | Requested Rate | Hours | Lodestar |
|---|---|---|---|
| *Robert A. Winter, Jr.* | $400/hr | 7.2 | $2,880.00 |
| *Thomas Bruns* | $400/hr | 125.8 | $50,320.00 |
| *Christopher Wiest* | $400/hr | 458 | $183,200.00 |
| **Total** | | **591** | **$236,400.00**[3] |

[R. 70-1 at 13; R. 72 at 15; R. 72-1 at 3.]  In addition to the amounts above, Plaintiffs also seek

costs in the amount of $2,613.25, for a total award of $239,013.25.  [R. 72 at 15.]  In support of

these figures, each attorney filed a detailed time report and a declaration averring the accuracy of

that report.  [R. 70-2; R. 70-3; R. 70-4.]  Additionally, Plaintiffs submitted declarations from

Jason Kuhlman and Jason Nemes, local attorneys who attest that the claimed rates are reasonable

---

[2] Although Plaintiffs also sought protection from prosecution for participating in in-person protests before the
Complaint was filed in this matter, the Court denied this request because neither the Kentucky State Police nor any
county attorney was a party to this suit.  [R. 67 at 7 n.1.]  However, this does not prevent Plaintiffs from being
declared prevailing parties because they still obtained a court-ordered, material change that was enduring in this
matter.
[3] This amount includes the hours spent on all briefing in this matter, including the Reply in Support of the Plaintiff's
Motion for Attorney's Fees.

for similarly experienced lawyers in Kentucky.  [R. 70-5; R. 70-6.]  Defendants disagree, arguing

that the Plaintiffs only achieved limited success, the number of hours billed is unreasonable, and

the hourly fee is exorbitant.  [R. 71 at 11–18.]  Each objection will be addressed in turn.

**1**

Defendants first contend that "because Plaintiffs achieved only limited success with

respect to the granted preliminary injunctive relief and failed to achieve any success in this

litigation after the Governor rescinded the challenged order," the Court should either entirely

deny Plaintiffs' motion "or at least deny compensation for all fees charge after December 14,

2020."  [R. 71 at 14.]  Plaintiffs argue that they received exactly the relief they sought in this

matter, that "the district court should focus on the significance of the overall relief obtained by

the plaintiff in relation to the hours reasonably expended on the litigation," and that excluding

time after December 14, 2020, in light of the appeal before the Sixth Circuit, is unreasonable.

[R. 72 at 4–6.]

> The Supreme Court has held that in civil rights cases where a

> plaintiff's claims for relief [] involve a common core of facts or [are] based on
> related legal theories…[s]uch a lawsuit cannot be viewed as a series of discrete
> claims. Instead, the district court should focus on the significance of the overall
> relief obtained by the plaintiff in relation to the hours reasonably expended on the
> litigation."

*Hensley*, 461 U.S. at 435.  Ultimately, "[t]he result is what matters."  *Id.*

Here, the Court agrees with the Plaintiffs.  In this matter, Plaintiffs sought "the ability to

protest, on both a particular date, and generally."  [R. 72 at 5.]  Plaintiffs' claims for relief in this

matter involved a "common core of facts."  *Hensley*, 461 U.S. at 435.  The Sixth Circuit granted

the Plaintiffs' injunction pending appeal and enjoined the state "from prohibiting protestors from

gathering for drive-in and drive-through protests, provided the protestors practice social

11

distancing and otherwise comply with the Order's regulations on lawful gatherings." [R. 29 at 6.] Subsequently, this Court "extended the preliminary injunction of the Order to in-person protests." *Ramsek*, 989 F.3d at 498. Then, while the matter was once again pending before the Sixth Circuit, Governor Beshear rescinded the underlying executive order. *Id.* Ultimately, as discussed *supra* in the prevailing parties context, Plaintiffs achieved the relief they were seeking and not merely "limited success" as Defendants claim. [R. 71 at 14.]

The Court also declines to "deny compensation for all fees charged after December 14, 2020." [R. 71 at 14.] Governor Beshear appealed this Court's order granting Plaintiffs' preliminary injunction on July 6, 2020, and this matter was pending before the Sixth Circuit until the Court issued an opinion and judgment on March 3, 2021. Although Governor Beshear rescinded the order underlying this case in December 2020, he still argued the case before the Sixth Circuit in January 2021. Defendants could have voluntarily dismissed their appeal after Governor Beshear rescinded the executive order, but they did not. Because Defendants were actively litigating this case after December 14, 2020, they cannot reasonably argue that Plaintiffs' attorney's fees must be denied following that date. Accordingly, the Court will deny Defendants' request to deny compensation for all fees charged by the Plaintiffs after December 14, 2020.

## 2

Next, Defendants argue that the number of hours billed by the Plaintiffs' attorneys is unreasonable "both standing alone and when viewed beside the billing records in similar pending litigation." [R. 71.] Defendants do not contest the number of hours billed by Mr. Bruns and Mr. Winter, only Mr. Wiest. Defendants argue that Mr. Wiest submitted excessive hours because "he worked double-digit hours in this case on 14 days, including 18.3 hours on May 21, 2020, and

over 15 hours on May 20 and 22, 2020." *Id.* at 15.  Defendants point out that "these hours appear even more excessive when compared to Mr. Wiest's billing records in *Roberts v. Neace*, No. 2:20-cv-000540-WOB-CJS," which was litigated contemporaneously to this matter.  *Id.* Defendants argue that the outside attorney affidavits failed to indicate that "they reviewed the total hours Plaintiffs' counsel claim for any day billed" and only indicates that the outside attorneys "reviewed the billing records for the instant matter." *Id.* at 15–16.  Ultimately, Defendants argue that Mr. Wiest's hours as a whole "must be viewed with skepticism." *Id.* at 15.

Plaintiffs argue that the Governor's arguments constitute "conclusory allegations." [R. 72 at 7.]  Plaintiffs point out that Defendants "own Counsel were [unwilling] to swear under oath that they spent less" time than Plaintiffs on this matter or "produce a single competing expert declaration to contest the analysis of the Plaintiffs' experts that the fees spent were reasonable for the tasks performed." *Id.*

Plaintiffs' arguments are persuasive, and the Court agrees that the Governor's arguments concerning the number of hours Mr. Wiest worked in this case are conclusory.  Defendants essentially argue that Mr. Wiest claims to have worked a lot of hours, and therefore his claimed hours should be viewed with skepticism.  However, Defendants proffer no supporting evidence to bolster this conclusory argument. [*See* R. 72-3 at 2 ("Merely pointing to the raw number of hours billed in a day without considering the context of what was being done" is not persuasive).]  Furthermore, Mr. Wiest provided a thorough Declaration and Statement of Services that detailed and itemized the amount of time he spent on this case. [R. 70-4.]  Both sides would agree that this matter was complex, as it involved the intersection of the First Amendment right to peacefully assemble and a global pandemic.

13

Mr. Wiest further bolstered his affidavit with Declarations from Jason Kuhlman and Jason Nemes, local attorneys who attest that the claimed hours were reasonable for similarly experienced lawyers in Kentucky given the complex subject matter.  [R. 70-5; R. 70-6.]  Both Mr. Kuhlman and Mr. Nemes also provided Supplemental Declarations in which they refute the Defendants' claim that working numerous double-digit days on a case over the course of multiple years is improbable.  While such work habits may be unusual in government legal practice, "[l]ong days and late nights are part of the 'gig' when it comes to being in private practice, particularly for solo practitioners.  [R. 72-3 at 2.]

Furthermore, instead of merely looking at the hours, Mr. Nemes points out that it is more appropriate to look at "the context, content, descriptors, and indicia of whether the work was, in fact, performed."  [R. 72-2 at 9.]  Both Mr. Kuhlman and Mr. Nemes, who are familiar both with private practice civil rights work and the specific work of Mr. Wiest in this case, found the hours to be reasonable, particularly given the fact that this litigation spread across multiple years and included two separate trips to the Sixth Circuit.  Mr. Nemes also provided a breakdown of the work Mr. Wiest performed, separated by hours spent per filing in this matter and found the hours to be reasonable.  *Id.* at 9–11.  Mr. Nemes also pointed out that the days in which Mr. Wiest worked particularly long hours line up with significant deadlines in this case.  *Id.* at 11.  It is reasonable for the Court to find, given that Mr. Wiest was litigating *Ramsek* and *Roberts* simultaneously, that particularly long hours were required when both cases had looming deadlines close together.  *Id.*  Accordingly, the Court finds the number of hours billed by Plaintiffs' attorneys in this matter to be reasonable.

**3**

Finally, Defendants argue that the rate of $400 per hour for the three attorneys constitutes an exorbitant fee. [R. 71 at 16.] Here, Defendants argue that a "review of recent awards counsels in favor of a much lower hourly rate," and that "[r]ecent awards in this District suggest a range between $170 and $350." *Id.* at 17–18. Defendants also point to a Declaration submitted in *Roberts v. Neace*, No. 2:20-cv-00054-WOB-CJS, in which, pursuant to a contract with the Commonwealth, Dressman Benzinger & Lavelle, PSC charges $215 per hour to represent the Commonwealth Executive Brach in court. *Id.* at 18.

Plaintiffs argue that the hour rate they are seeking is appropriate in this case because it is in line with other recent fee awards, that Defendants failed to proffer any evidence to contest the expert declarations, and that the Dressman Benzinger & Lavelle comparison is inapposite because the firm is working on a "bulk, guaranteed paid legal work" basis whereas the Plaintiffs' attorneys are not. [R. 72 at 11–14.] Mr. Kuhlman and Mr. Nemes also state that $400 per hour is an appropriate rate for the three attorneys. [R. 70-5 at 3; R. 70-6 at 3.]

Plaintiffs are correct that, on occasion, attorneys in this district to receive $400 per hour or more in attorney's fees. *See, e.g.*, *Clark v. West Iris Transport, Inc.*, 2020 WL 2781601, at *6 (E.D. Ky. Feb. 27, 2020) (finding "reasonable fee for partners is $400"). Furthermore, the Court finds the Defendants' $215 per hour comparator is indeed inapposite because private practice, particularly solo private practice, is much different from "bulk, guaranteed paid legal work." [R. 72 at 11–14.] A review of recent cases involving these three attorneys guides the Court in making its determination. In early 2019, Judge McKinley in the Western District of Kentucky found that $350 per hour for Messrs. Bruns and Winter and $325 per hour for Mr. Wiest was a reasonable rate. *Brooksbank v. Koch*, 2019 WL 7407401, at *3 (W.D. Ky. Apr. 15, 2019).

About a year and a half later, in November 2020 in this district, Judge Bertelsman found $375 per hour for Messrs. Bruns and Winter and $350 per hour for Mr. Wiest was a reasonable rate. *Sweeney v. Crigler*, 2020 WL 7028703, at *1 (E.D. Ky. Nov. 30, 2020) (adopting report and recommendation recommending Messrs. Bruns and Winter receive $375 per hour and Mr. Wiest receive $350 per hour).

Here, in early 2022 (about a year and a half since *Sweeney*), the Court finds that a rate of $400 per hour for Messrs. Bruns and Winter and $375 per hour for Mr. Wiest is reasonable. This rate accounts for the complexity of the issues in this case, tracks with prior findings of this Court, and also accounts for the fact that Messrs. Bruns and Winter have thirty-four and thirty-one years of legal experience respectively and Mr. Wiest has sixteen years of legal experience. [R. 70-5 at 3.]

Finally, Plaintiffs seek a fee enhancement given the unique nature of this case and "the continued barrage of attacks by the Defendants." [R. 72.] While this case is unique given the global pandemic element, the Court will not grant a fee enhancement because the Court finds the hourly rate provided is appropriate in this matter.

### III

The Court agrees with Defendants that the fee award in this matter should be reduced as to Mr. Wiest's hourly rate. The Court will reduce Mr. Wiest's rate from $400 to $375 per hour. Otherwise, the Court will grant the Plaintiffs' motion. The following chart portrays the updated attorneys' fees:

| Attorney | Requested Rate | Hours | Lodestar |
|---|---|---|---|
| *Robert A. Winter, Jr.* | $400/hr | 7.2 | $2,880.00 |
| *Thomas Bruns* | $400/hr | 125.8 | $50,320.00 |

| *Christopher Wiest* | $375/hr | 458 | $171,750.00 |
|---|---|---|---|
| **Total** | | **591** | **$224,950.00** |

In addition to the amount above, Plaintiffs also seek costs in the amount of $2,613.25, for a total award of $227,563.25.  Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendants' Motion for Reconsideration **[R. 68]** is **DENIED**;

2. Plaintiff's Motion for Attorneys' Fees **[R. 70]** is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. The Defendants **SHALL PAY** Plaintiffs a total of **$224,950.00** in attorneys' fees for the work performed by Robert A. Winter, Jr., Thomas Bruns, and Christopher Wiest, which includes the time spent preparing the briefing for the Motion for Attorneys' Fees; and

   b. The Defendants **SHALL PAY** Plaintiffs a total of **$2,613.25** for litigation costs.

3. Judgment shall be entered accordingly.

   This the 22d day of August, 2022.

Gregory F. Van Tatenhove
United States District Judge

17